Oyez, oyez, oyez. The Honorable Appellate Court, 5th District, State of Illinois is now in session. The Honorable Justice Cates presiding along with Justice Welch and Justice Barberis. The first case this morning is number 521-0210, Tri-Plex Technical Services, Ltd. v. Jon-Don, LLC, et al. Arguing for the appellant, Tri-Plex Technical Services, Ltd., is Robert King. Arguing for the appellant, Jon-Don, Legend Brands, Bridgeport, Groom, HydroMaster, and Chemical Technologies, is Joel Bertocchi. Each side will have 15 minutes for their argument. The appellant will also have five minutes for rebuttal. Please note only the clerk is permitted to record these proceedings. Good morning, gentlemen. Good morning, Your Honor. Welcome. Mr. King, you're going to argue for the plaintiffs? Yes, Your Honor. You may begin when you're ready. Thank you. May it please the court. My name is Robert King, and I'm one of the attorneys for Tri-Plex Technical Services, Ltd. This is an unfair competition case, and the core allegation is that defendants compete unfairly. They don't play by the rules. The rules in this case happen to be environmental rules, but the harm at issue that Tri-Plex seeks to redress in this lawsuit is a harm to the marketplace and competition. Carpet cleaners containing volatile organic material are banned for sale and use in Illinois. Two of the defendants sell them in Illinois anyway, and carpet cleaners containing enough phosphorus to make them effective cleaners are generally banned. They can only be sold and used to clean carpets in healthcare and far more phosphate cleaners in Illinois than could ever be accounted for by this narrow healthcare facility exception. The reasons defendants sell these banned and restricted use products is that they clean better than compliant cleaning agents. In short, defendants don't play by the rules, and they make it difficult, if not impossible, for law-abiding businesses like Tri-Plex to compete with legally compliant products. This case is not ultimately or primarily about environmental harms or in remedying environmental harms. This case is about harm to competition and the unfair ways in which defendants compete in the carpet detergent industry. To pick up where our reply brief ended, defendants prevailed on the Supreme Court to make three rulings of law that no amount of repleting could have cured. I'd like to address those three wrongs. First, the court held that a competitor like Tri-Plex can't do anything about unfair competition in Illinois when the unfairness at issue stems from a violation of Illinois' environmental laws. The statutory provision upon which defendants and the circuit court primarily rely, however, is explicitly on its face a limitation on the ability of municipalities to regulate phosphorus and detergents. It's nothing more, it's nothing less. Defendants only quote the first sentence of the statute, section 5f of the Detergents Act, which says, quote, the regulation of phosphorus and detergents is an exclusive power and function of the state, but that provision continues. Quote, a home-ruled unit may not regulate phosphorus and detergents. This section is a denial and limitation of home rule powers and functions under subsection h of section 6 of article 7 of the Illinois Constitution. So the statute itself expressly declares its purpose and it has nothing to do with preempting or displacing the application of any other state statutes, statutes like the Consumer Fraud Act or the Deceptive Trade Practices Act. The fact that one aspect of the relief available in a civil suit like this happens to mirror one form of relief the EPA could pursue, that's the enjoining of the sales of the illegal products, that doesn't compel the conclusion that the Consumer Fraud Act or Deceptive Trade Practices Act can't be enforced in this circumstance. Defendants' unlawful conduct simultaneously has two kinds of detrimental impacts, one that a private lawsuit can regress and one that only the state can seek to redress. Their unlawful conduct undoubtedly causes environmental damage and it's true, only the state can remedy that damage and it has an entire panoply of enforcement tools at its disposal, including fines and even criminal enforcement. A triplex doesn't seek to enforce any of those remedies or seek relief for damages to the defendant's unlawful conduct causes. That's harm to the marketplace. Law-abiding business owners like triplex are at a distinct disadvantage when they try both to compete in the carpet detergent industry and to do so in compliance with Illinois law, all Illinois law, including its environmental laws. We think right now the only way to compete in that market is to cheat like the defendants do. If you don't, you don't stand a chance against their products. It surely cannot be that redressing that wrong is prohibited merely because it might also have the effect of putting a stop to violations of environmental law as well. And indeed, as we explained in our opening brief, claims under the Consumer Fraud Act are routinely based on violations of the laws and that's a point defendants never address. First, the statute contains a laundry list of other laws, the violation of which are automatic per se violations of the Consumer Fraud Act. Unfairness claims under the Act, which we didn't bring up to make a new argument, we brought it up to point this fact out. Unfairness claims under the Act often depend on violations of other laws. The first consideration of the three prongs of an unfairness claim under the Consumer Fraud Act is the violation of public policy. And where is public policy embodied? It's embodied in ordinances and statutes and regulations. Those kinds of claims are routine under the Consumer Fraud Act. No Illinois law has the embodiment of public policy of the state of Illinois is off limits in a Consumer Fraud case for unfairness. And if an unfairness claim under that Act, based on violation of any other Illinois laws, there is no logic for barring any kind of Consumer Fraud Act claim that is based on violations of other laws. There is no merit to the defendant's position and the circuit court's ruling ought to be reversed. The second ruling I'd like to address is a circuit court's holding that defendants allege compliance with a federal workplace law precluded this lawsuit. That ruling is also and fatally flawed, both procedurally and substantively. The Consumer Fraud Act and the Deceptive Trade Practices Act have safe harbor provisions, but they provide affirmative defenses that can't be decided at the pleading stage. Defendants have to plead and prove them. And substantively, as we pointed out in the briefing, mere compliance with a federal law or regulation isn't even sufficient under the Consumer Fraud Act. That Act exempts conduct that has been specifically authorized. That's the language of the statute. And the cases make clear that means it has to be specifically authorized by a law or a government official. And there was absolutely no showing of that in proceedings below. So that ruling can't stand either. Mr. King, you got that. This has to do with the labeling, is that correct? It does. Is it your position that the labeling would be an affirmative defense to the complaint that you filed? The issue of labeling that the defendants raised. The claim that they complied with federal law would be an affirmative defense under the safe harbor provisions of the two-action issue. So on a motion to dismiss, would that have been a 619 motion or a 615? It's not clear to me what the court did here. It's not clear to me either. It's also not clear what the defendants did because we don't have even a single one of their labels before the court. So it's not, even if this were appropriate at the pleading stage, the evidence is certainly not there to have sustained a dismissal at this stage. Okay, thank you. I mean, there's not even an actual pleading of the facts that would support that kind of claim. So we don't have pleading, we don't have proof, and we're at the dismissal stage. It seemed like the court made some findings that were more appropriate either in summary judgment or judgment on the pleadings. Yeah, these are facts that would be decided at a later stage of the proceedings. But with respect to the last point I made, I'd also like to point out that mere compliance with a federal statute isn't even enough under the Consumer Fraud Act. So putting aside whether or not it's good enough under the Deceptive Trade Practices Act, there has to be specific authorization. There wasn't even a claim of that because there is no specific authorization. Would you agree that compliance with federal regulations is a complete defense to consumer fraud claims under Lanier versus Associate Finance? That was based on the very provision that I'm talking about right now. And the cases have made clear since Lanier that what you have to have is specific authorization of the conduct at issue, and that has never occurred, and even defendants haven't claimed that it has occurred. There's been no specific authorization by a law that describes this conduct or by an official here, a federal official. And by the way, don't forget what the federal law is that they're relying on. It's a workplace rule. This isn't a labeling. This isn't like an FDA rule about what can and cannot be on labels of drugs or cosmetics. This is a workplace rule, and it doesn't extend beyond the workplace. The only force and effect that it has is in the workplace. Okay, thank you. The third ruling that the court made was that TriFlex lacked standing because it could not satisfy the consumer nexus test, the test that a competitor has to satisfy in order to sue for unfair competition under the consumer fraud act. Now, under that test, a competitor has to show that a defendant's practices affected consumers, and defendants prevailed on the circuit court to that the carpet cleaning businesses to whom they sold their illegal products aren't consumers because they're businesses. That's just not the law in this state. Under Illinois law, businesses can be consumers as long as they are the ultimate consumers of another business's products. The question is whether the business at issue consumes a product or turns around and resells that product to consumers. Carpet cleaning businesses are clearly consumers of defendant's product. They buy those products. They use them. They literally consume them as part of the service they provide to their customers. Customers never take possession of the cleaning agents. Cleaning agents are not incorporated into a product those customers receive. The carpet cleaning businesses are the ones who use the cleaners, and that makes them consumer fraud. Trial court's contrary ruling on that issue can't stand. So, the question we're left with when those three issues are set aside is whether Triplex adequately pled its consumer fraud and deceptive trade practice claims. Before I address those questions, it bears emphasizing that even if this court were somehow to conclude that there's some deficiency in the current the circuit court's dismissal should be reversed and the case remanded with the opportunity for Triplex to replead. And the reason is that the first three rulings I just discussed were rulings that Triplex could not have avoided by repleting. No matter what Triplex might have alleged in an amended pleading, those three rulings were an obstacle to this case proceeding. Any repleting would have been futile. And as the Supreme Court held in the Bawa versus Metro Life Insurance case in 2004, we cited in our reply brief, under those circumstances a plaintiff is entitled to replead on remand. That said, the supposed deficiencies in Triplex claims were simply no basis for dismissal. Defendants in the circuit court say that Triplex's deceptive trade practices act claim is deficient because plaintiff's allegations do not involve confusion between defendant's products and plaintiff's or any other entity's products. That's in the order at seven appendix page 67. That is literally the only thing defendants of the circuit court found wrong with the pleading sufficiency of Triplex UDTPA claim. The problem with that position is that it's a serious misunderstanding of the scope of the deceptive trade practices act. Now it's the omissions and implicit misrepresentations Triplex alleges are not akin to trademark infringement. There's no dispute about that. But that's what the circuit court and defendants say are the limited reach of the deceptive trade practices act. They say it's limited to conduct that causes confusion about products, but the plain language of the act prohibits conduct that quote, causes likelihood of confusion or misunderstanding as to the approval of goods that's section a2 and representations quote that goods or services have characteristics or uses that they do not have that section a5. By offering for general sale cleaning agents that are outright banned or mostly banned, defendants cause a likelihood of confusion or of misunderstanding as to Illinois' approval of those cleaning agents for general use. And they make implicit representations that their products have characteristics or uses that they don't have. That's just a straightforward application of the plain language of the statute. And it takes some fancy footwork to avoid that result. Neither the defendants nor the circuit court ever offered any explanation of how to do that except to misread the statute as reaching only conduct that is akin to trademark infringement. And they never bother to quote any other conduct, which similarly creates a likelihood of confusion or misunderstanding. I see that my time has expired. So thank you, Your Honor. And Mr. King, you'll have a few minutes after Mr. Bertocchi has his chance to argue the case. Thank you, Mr. Bertocchi on behalf of the defendants. Yes, Your Honor. Thank you. Joel Bertocchi is my name. Excuse me. I represent John Donne, defendant John Donne. And today I'm arguing on behalf of all of the defendants in the case. When the court considers this, I would ask the court to consider two aspects of the plaintiff's complaint throughout because their arguments aren't always consistent with them. One is that the underlying claim is not about disclosure of phosphorus. It is what the complaint says is that we don't tell people our products are illegal or that they violate the law or that they are legal per se. I think it's language that's used at one point. That is the actual nature of the claim. And there is no law or regulation cited anywhere in the plaintiff's briefing that ever says that anybody is obliged to do that. In fact, it really doesn't make a lot of sense. No one would ever do that. And it's illogical to believe they would. And therefore, no consumer, however you define that term, is likely to expect to see an opinion on that in their on the labels of their products. The other thing to remember is that the claim and I think Mr. King confirmed it this morning. The claim is exclusively based on claims of violations of environmental laws and rules. There is no other law or rule that they say the plaintiff's products violate. And if you think about keep those in mind, you can you can you will come to the conclusion. I believe that Judge Rudolph was right to dismiss the Second Amendment. Mr. Brutonky, let me ask you a question. You use the language illegal per se. And I noted that in the plaintiff's brief, they took exception with that, that they've never claimed that that doesn't appear anywhere in their pleadings. And that that's something the defendants have interjected. Would you comment on that, sir? Well, Your Honor, as Judge Rudolph pointed out, and I think he's even Mr. King mentioned there are legal uses for this. So the label that the plaintiffs in their complaint said should be on there that these products are illegal, illegal would be an incorrect label. And so the label that they're really asking for would have a whole lot of exceptions to it if that label was required. But I think when they just say illegal, I think that's how if that's all the label said, that's how somebody would read it. And that's the claim they pled. They may not have pled the words per se. But when you say this product is illegal on a label, that's what a means. Well, I have the same question for you. I haven't had from Mr. King. I can't tell from the court's order, how it's arriving at a factual foundation that the labeling was appropriate. Well, Your Honor, I could get to the labeling now if you want to talk about that. And what the plaintiff is doing here is trying to shift their pleading burden into our proof. In a labeling case, particularly where the statute specifically exempts conduct that complies with regulations, it is the job of the plaintiff to plead that. It is not included. It is an aspect of liability. I've done a lot of labeling cases and plaintiffs have to meet that in their pleading. So it isn't a proof problem yet. And so is it unproven? If our labels should be in the record, the plaintiff should have put them there. But again, this is not an affirmative defense. It is an aspect of liability and the statute makes it so. And that's true generally. I'm sorry, Your Honor. I apologize. Zoom is a tough thing. Isn't it true, though, that the labeling issue is one where the plaintiffs have alleged that the defendants don't disclose the amount of phosphorus and the defendant's labels have some letters that one wouldn't really understand that that's phosphorus? Isn't there allegations in the plaintiff's complaint like that? Your Honor, the only thing that they say is wrong with our labels that they actually say in their law or are illegal. There is a claim in their briefing where they say we don't disclose the phosphorus content. That was not pled and that's been waived. But either way, Your Honor, if labels comply with federal law, then as both statutes say, there's no liability. And that, because it's in the statute, is the plaintiff's burden to plead before anybody gets to proving what is and is not there. Now, certainly the plaintiffs could have attached labels to their complaint. People attach that sort of thing to complaints all the time. But the fact that they're not in there is not our fault. It's the plaintiff's fault. Okay. Thank you very much. Yes, Your Honor. Let me get back to the exclusivity question, because the plaintiff's reading of Section 5F of the Detergents Act makes no sense. The first sentence of that says the regulation of phosphorus and detergents is an exclusive power and function of the state. That's a very plain declaration, which would not by itself include private plaintiffs, which is why, if you look at the cases, there's no history of private plaintiffs enforcing these statutes under consumer fraud or otherwise. The second and third sentence of that statute do not limit the first statute section. What they do is they essentially define, for purposes of that statute, who the state is. And I know the Court has dealt with home rule issues before. There are times when home rule entities act according to their home rule powers, they are simply definitional as to the last word in the first sentence. But saying only the state can enforce that, and then in the next part saying, and this is who the state is in this statute, doesn't in any way detract from or limit the plain and obvious meaning of the first sentence in 5F, which is that only the state can regulate the phosphorus in detergents. On this issue, the NBD Bank case, which we cited from the First District, is instructive. NBD Bank said to look, when you're trying to plead, when a private plaintiff is trying to enforce environmental laws, look to who the statute was designed to protect. And the environmental statutes in Illinois were designed to alleviate or prevent environmental harm. It's pretty clear that those statutes were not designed to prevent competitive injury to business competitors. But in fact, interestingly enough, the NBD Bank plaintiff had costs associated with environmental injury, and even they were not allowed to sue. So I think the plaintiff is simply reading Section F wrong. There is nothing about the second and third sentence of Section 5F that limits the first sentence. Those two passages simply define the term state to not include in this instance, municipalities, you know, home rule entities, villages, towns, and cities. But that does not mean that it does include, that the state does include private plaintiffs. I want to talk, yes. Mr. Bertocchi, on that issue, couldn't the state have a fraud where the plaintiffs intend to use the statute as evidence of the fraud? That is, there's a certain amount of phosphorus or VOMs that are allowed by law, and it's against public policy to exceed that amount. And so it's not a question of pleading, but a question of evidence evidence that would be involved. Your Honor, the problem with that is that no matter how you frame it, it's an effort to enforce environmental laws, whether you're doing it through a fraud, you know, by saying it's fraud or not. Mr. King says lots of cases, lots of these cases refer to other statutes, but I would bet, and I haven't seen one cited, that they refer to statutes that say you can't enforce this. So I don't think that would have solved the problem, Your Honor. I'm not sure really that Judge Rudolph didn't frame it that way. I think he understood that their claim was that there is a falsehood aspect to not saying your product is illegal, but the illegality would still be the environmental laws which are exclusively enforced by the state. And that's a very specific policy judgment that the General Assembly has made in those statutes, is to say that, you know, environmental laws involve technical aspects, they involve enforcement priorities, and so the state is supposed to do it. And that's why if you look at these cases, all the cases that deal with this, if you research the issue, are all about can a county do it, can a village do it, can a city do it. Their private plaintiffs don't do it because they can't, because they can't be called the state in any way. And pleading it the way you're talking about, had they done so, and putting it in, you know, saying, well, it's only a fraud, and, you know, those statutes provide context, you're still trying to enforce environmental laws, and private plaintiffs can't do that. So I don't think it would have solved the problem, Your Honor. Thank you. Yes. I want to move on to the consumer nexus test argument that Mr. King made. Under the plaintiff's argument, everybody is a are designed to deal with primarily the marketplace, but excluded from that are concerns, are businesses that are buying products to use in their delivery of services to consumers. It is not strictly speaking correct to say that the customers of the plaintiff and the defendants consume this product, they buy it, it's a little more subtle than that, they buy those products to use in delivering services to actual consumers. It is, it is, it is not the same thing. Business, I don't even want to say business consumers, but they're not, but the case law says that businesses are, that buy products for use in their delivery of services to consumers are not what's covered by this. And so in that sense, the plaintiffs don't pass the consumer nexus test. The ultimate use argument that they made in their briefs has been rejected rather roundly. The fact that this ends up with consumers, although I don't know a lot about carpet cleaning, but I suspect it does not end up in the homes or businesses of any actual consumers of carpet cleaning services. But this is why as one of, as the Seventh Circuit said, surveying Illinois law, Illinois courts are skeptical about business to business competition, consumer, consumer fraud claims. Regarding the UDTPA, the plaintiffs have not pledged source confusion. And that is the core aspect. That is what the UDTPA is about. The plaintiff's do anything anybody says anywhere. Again, it's overly broad, but all those cases that can screw the statute say there's got to be some confusion about origin, about whose product this is. And there's nothing like that pled. The statute does not, UDTPA does not attach to anything anyone thinks is unfair. Again, and to sort of harken back for a moment to the exclusive jurisdiction argument, if the plaintiffs, if the plaintiff believes that there's something wrong here, environmental laws are being violated, they should go to the EPA or pollution control board. And maybe they have, I don't know. But those are the bodies that can decide that. But in the absence of some other law or rule, including a rule that says you have to disclose your product is illegal if it's illegal, and there's no such rule or law, there is no unfair practice here. And finally, Your Honor, I would like to end where Mr. King did on his request to amend. The plaintiffs did not, when they defended their second amending complaint, ask Judge Rudolph to allow them to amend. And they can't ask for it now. The Supreme Court said that in the Bonjour case. And this is, I would also note that the complaint that Judge Rudolph dismissed was their third try. I think the case, he properly ended the case. There was no request, no specific argument that, hey, we can replead this that was made to Judge Rudolph. And they can't make it now. And with that, unless the court has any questions, additional questions, I'll stop. Thank you, Mr. Bertocchi. Justice Welch, questions? Justice Barberis? No. Okay, thank you, Mr. Bertocchi. Mr. King, you have some reply? I do, Your Honor. I'll try to make it brief. With respect to the very last point that counsel made, the Bawa case recognizes the exception to the general rule that he is relying on, and that exception clearly applies here. And so when there has been a ruling by the court that you can't get around by repleting, you don't have to ask for permission to replete before taking your appeal. And you can still, if you get that ruling reversed on appeal, replete when the case is reversed and remanded. And that only makes sense. Why would you go through the charade of repleting something that's not going to make any difference? That's the whole point of the exception, which counsel has simply not addressed. So that's the repleting issue. On the confusion about origin, that is just a misstatement of the law. The cases that defendants have cited, and we've explained this in our reply brief, those cases all dealt with conduct that was akin to infringement. And in that context, the court said, you know, that's what the UDTPA covers. It didn't make any grand pronouncements about the scope of the entire UDTPA, which has 12 provisions. They don't discuss the three provisions we rely upon that have nothing to do with origin or confusing products with somebody else's product. They have to do with claims, implicit claims and representations that product has approval that it doesn't have here, approval by the state of Illinois, when in fact their volatile organic materials that Mr. Bertocchi's client sells, those are absolutely banned, without exception, in Illinois. You cannot use them for carpet cleaning in Illinois. The phosphorus products are mostly banned. You can use them in very limited places. And that gets back to the original claim. What is the claim? They should be telling people when they sell these things, they shouldn't be selling the VOM products in Illinois, sale of VOM products for carpet cleaning in Illinois is banned. But if they do, they need to make very clear that the product cannot be used for carpet cleaning in Illinois. And they don't do that. That's a fact about their product. And they don't disclose it. And the same is true with phosphorus. It's not some, you know, technical or very long listed label that you would have to provide. Although those kinds of labels do exist, as we all know, if you've ever bought a pesticide or drugs, you get those kinds of things. But that's not even necessary here. If you buy a phosphate cleaner, you can only use it to clean carpets in Illinois if you use it in a hospital, a veterinary clinic, or a nursing home. That easily goes on a label. And that's the claim here. To pretend that it's something else is just disingenuous. Now, they say that the phosphorus content was not pled and waived. I don't recall off the top of my head whether it's actually in the complaint. But this is something we pointed out also in our reply brief. It was argued at the circuit court, at the hearing. It's in the record. One of the counsel for the defendants objected to that very argument being made. So, it's not like we never made this claim in the circuit court. We did. And it's not waived. And if it needs to be alleged, if it needs to be in the complaint, we should be given leave to amend the complaint when we go back down. It would have made no difference to the circuit court's ruling in this case, had we attempted to add that pleading at that time. It only makes a difference if you overrule the circuit court on its first three rulings that I discussed here today. Which takes us back to the detergent act. We have discussed in our reply brief what that provision means. And we've cited the Illinois cases that discuss what the general assembly has to do in order to make sure that its intention to limit home rule is effective. And it has to be a provision just like this. And that's what that provision is. It's a limitation on home rule. And we have never said that the proper interpretation of is, and private parties can enforce the environmental laws. That is an incidental effect of the marketplace, unfair competition claim in this case. It is not the focus. We aren't going to be seeking remediation for damages they've caused. We aren't going to be seeking possible criminal charges. All of the things that are available to the Illinois EPA are things that only the Illinois EPA and the attorney general can enforce. And we're not trying to do any of that. What we're trying to do is bring fairness to the marketplace. I see my time has expired. Thank you. Thank you, Mr. King. Thank you, Mr. Bertocchi. This matter will be taken under advisement and we will issue an order in due course. Appreciate your arguments, gentlemen. Have a great day.